Harold M. Hewell (Cal. SBN: 171210)
*hmhewell@hewell-lawfirm.com*
HEWELL LAW FIRM
105 West F Street, Second Floor
San Diego, California 92101
(619) 235-6854
(888) 298-0177 (f)

*Attorney for Plaintiff*

FILED

2010 FEB 12  PM 1: 28

CLERK US DIS... ....
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MARIA HERNANDEZ, an individual,

    *Plaintiff,*

vs.

HSBC BANK USA NATIONAL
ASSOCIATION, individually, and as
Trustee for PHH 2007-3, and **PHH
MORTGAGE CORPORATION,** a
New Jersey corporation,

    *Defendant.*

CIVIL ACTION NO.:

**'10 CV 0 3 5 2 LAB      WVG**

**COMPLAINT FOR INJUNCTIVE
RELIEF AND OTHER EQUITABLE
RELIEF, AND FOR DAMAGES**

***Jury Trial Requested***

Plaintiff, Maria Hernandez, alleges as follows:

### I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter presented by this Complaint under 28 U.S.C. § 1331, as it alleges violations of federal law and thus invokes federal question subject matter jurisdiction.

2.    This Court also has jurisdiction over the subject matter presented by this

Complaint pursuant to 28 U.S.C. § 1332(a), as the Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds the statutory threshold.

3.    This Court has personal jurisdiction over the Defendant, as at all times relevant herein, it conducted business within California and this Judicial District.

4.    Venue in this Judicial District is proper pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and the property that is the subject of this action, located at 1211 Holly Street, Oceanside, California 92054 ("Property"), is situated in this Judicial District.

## II. PRELIMINARY STATEMENT

5.    This is an action for declaratory judgment, temporary, preliminary and permanent injunctive relief, and damages for predatory lending in the provision of financial mortgage lending assistance. Plaintiff seeks to overturn the trustee sale of her home, and seek her remedies as outlined below.

## III. PARTIES

6.    Plaintiff Maria Hernandez ("Ms. Hernandez" or "Plaintiff") is an individual consumer who at all time material hereto, was over 18 years of age and a resident of San Diego County, California, as well as this Judicial District. For purposes of diversity jurisdiction, Ms. Hernandez is considered a citizen of California. She respectfully requests a jury trial on all matters relating to damage claims.

7.    Defendant HSBC Bank USA, National Association ("HSBC"), was established on July 1, 2004, and is chartered as a National Bank with its main office (headquarters) located at 1800 Tysons Boulevard, Suite 50, McLean, Virginia 22102, County of Fairfax. For purposes of diversity jurisdiction, HSBC is considered a citizen of Virginia. At all times relevant herein, HSBC was doing business within the State of California and this Judicial District; it maintains 32 offices in California, including one located in this judicial district at 884 Eastlake Parkway, Suite 1619 Chula Vista, California 91914, and it lists with the California Secretary of State a registered agent for

service of process by the name of CT Corporation System, 818 West Seventh Street, Los Angeles California 90017. HSBC contends it was assigned the Note and Deed of Trust for the Property from PHH 2007-3, and acted in the capacity of Trustee as the result of that assignment.

8.    Defendant PHH Mortgage Corporation ("PHH," or collectively with HSBC, "Defendants") is a New Jersey corporation which maintains its principal place of business at 1 Mortgage Way Mailstop LIC, Mount Laurel, New Jersey 08054. For purposes of diversity jurisdiction, PHH is considered a citizen of New Jersey. At all times relevant herein, PHH was doing business within the State of California and this Judicial District through PHH offices and/or mortgage brokers. PHH lists with the California Secretary of State a registered agent for service of process by the name of Corporation Service Company which will do business in California as CSC - Lawyers Incorporating Service, located at 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833 PHH was the origination lender for Ms. Hernandez' financing of the property, and purportedly assigned the Note and Deed of Trust that arose from that transaction to HSBC as PHH 2007-3.

## IV. GENERAL ALLEGATIONS

9.    At all times relevant hereto, Defendants, in the ordinary course of their business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

10.    Plaintiff alleges on information and belief that at all times herein mentioned, that the subsidiaries, affiliates and other related entities of HSBC, as well as the respective employees thereof and the respective employees of HSBC, were the agents, servants and employees of HSBC, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment.

11.    Plaintiff alleges on information and belief that at all times herein mentioned, that the subsidiaries, affiliates and other related entities of PHH, as well as

the respective employees thereof and the respective employees of PHH, were the agents, servants and employees of HSBC, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment.

12.     Whenever reference in this Complaint is made to any act or transaction of HSBC and/or PHH, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of the referenced entity committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of that entity while actively engaged in the scope of their duties.

## V. FACTUAL ALLEGATIONS

13.     Plaintiff contends that she is the owner of the Property. That real property is the subject of this suit and all claims made herein are based upon the financing and ownership of the Property in the name of Plaintiff.

14.     In early 2007, Plaintiff sought to refinance the Property. To do so, she sought the services of Hacienda Mortgage, which acted as the mortgage broker in the subject transaction of this Complaint.

15.     On March 12, 2007, Plaintiff submitted a loan application and subsequently was approved by PHH for a conventional 30-year loan in the amount of $276,250.00 with an interest rate of 6.000% ("Loan").

16.     The Loan closed on April 25, 21007, and was funded on April 30, 2007. Under the Loan terms, Plaintiff was to make 359 monthly payments of $1,656.26 and a final payment of $1,654.36.

17.     Plaintiff speaks and writes primarily in Spanish. Although the mortgage broker negotiated the loan with her in Spanish, all Loan documents provided to her were written in English, making it virtually impossible for her to understand the complex content of the documents. She was required to rely upon the mortgage broker and PHH to provide her a loan that was within her ability to repay.

18.     As the economy and real estate market deteriorated, Plaintiff began having difficulty making payments on the Loan. She was sent a notice of default, but was unable

to bring the Loan current, and subsequently received a notice of trustee sale.

19.     On November 3, 2009, HSBC, acting as Trustee for PHH 2007-3, obtained record title to the Property following a non-judicial foreclosure sale.

20.     Plaintiff had a forensic audit ("Audit") performed on the Loan and her finances at the time the Loan was approved. The audit, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference, found a number of lending and underwriting violations, which include, but are not limited to the following:

  a.   The Debt-to-Income ("DTI"[1]) ratio for the Loan is more than five times traditional underwriting guidelines.

  ■   Ms. Hernandez' Loan for the refinance appears to have been underwritten as No Documentation (No Doc) by PHH. No Doc loans do not require the borrower to state their monthly income. Ms. Hernandez' Loan application listed her primary occupation as Quality Control for Print Ink for eight years.[2]

  ■   Using Ms. Hernandez' tax returns for 2005 and 2006, the two years preceding the transaction, the auditor calculated the following:[3]

| Tax Year | 2005 | 2006 |
| --- | --- | --- |
| Wages: | $21,314.00 | $22,466.00 |
| Schedule "E:" | $0.00 | ($50.00) |
| Total Income: | $21,314.00 | $22,416.00 |

  ■   Plaintiff's total income for the two-year period above, according to

---

[1] This ratio is computed by dividing the borrower's gross monthly income into the borrower's total debt payments, including the proposed mortgage that is being underwritten, and is a key factor used by underwriters to assess the borrower's ability to repay the loan.

[2] Audit, p. 1.

[3] Id.

the tax returns, was $43,730.00, or $1,822 per month.

- The auditor calculated her total debts as follows:[4]

| | |
|---|---|
| Fixed Rate | $1,656.26 |
| Insurance, Taxes, HOA | $267.75 |
| Consumer Debts | $300.00 |
| Net Rent Loss | $2,701.00 |
| **Total Debts** | **$4,925.01** |

- The borrower's DTI ratio, based on the income derived from the tax returns, is 270.31% ($4,925.01 ÷ $1,822), a ratio which is well in excess of the maximum DTI ratio allowed under all usual and customary underwriting guidelines for Alt-A and/or subprime lending (usually 45% – 50%). The underwriter for a lender has a responsibility to follow the lender's underwriting guidelines and to ensure that he or she has conducted a thorough analysis of the borrower's ability to repay the Loan. By making a loan more than five times traditional underwriting guidelines, PPH put Plaintiff in a position where she faced a high probability of default.[5]

- Plaintiff's monthly liabilities of $4,925.01 would have required her to earn approximately $120,000 annually (or $10,000 per month) to qualify under most mortgage lending guidelines. It's inconceivable that PHH believed that her quality control job paid in this range.[6]

   b.  The Loan transaction violated the federal Truth In Lending Act ("TILA"),

---

[4] Audit, p. 2.

[5] Id.

[6] Id.

15 U.S.C. § 1601 et seq., implemented by Regulation Z (12 C.F.R. 226).

- The Loan violated the TILA finance charge test (12 C.F.R. § 226.18(d)(1)), as the disclosed finance charge was $327,361.62, which is considered inaccurate because it understates the actual finance charge of $331,585.37 by considerably more than $100.[7]

- The Loan failed the TILA foreclosure rescission finance charge test (12 C.F.R. § 226.23(h)), as the disclosed finance charge is considered inaccurate because it understated the actual finance charge by considerably more than $35.[8]

- The Loan failed the TILA Annual Percentage Rate ("APR") test (12 C.F.R. § 226.22(a)(2),(4)), as the disclosed APR of 6.252% is considered inaccurate because it is more than 1/8th of a percentage point below the actual APR of 6.403%.[9]

c.  The Loan failed to comply with California Civil Code § 2948.5, which requires that the borrower is to be provided with a copy of the California Per Diem Interest Disclosure, which was not found in the documents provided to Plaintiff by PHH.[10]

d.  PHH failed to provide other mandatory disclosures.

- The auditor found no evidence in the documents provided to Plaintiff by PHH that the following disclosures were provided to Plaintiff, as required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.: Good Faith Estimate; Affiliated Business

---

[7] Audit, p. 1.

[8] Id.

[9] Id.

[10] Audit, p. 3.

Arrangement Disclosure; Servicing Disclosure Statement; Notice of Assignment, Sale or Transfer of Servicing Rights; and the Escrow Account Disclosure.

- ■ The auditor found no evidence in the documents provided to Plaintiff by PHH that the following disclosure was provided to Plaintiff, as required by TILA: Initial Truth in Lending Statement & Itemization of Amount Financed.

- ■ The auditor found no evidence in the documents provided to Plaintiff by PHH that the following disclosure was provided to Plaintiff, as required by the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. 1691 et seq. and Regulation B, 12 C.F.R. § 202: the initial signed and dated Uniform Residential Loan Application (1003).

- ■ The auditor found no evidence in the documents provided to Plaintiff by PHH that the following disclosure was provided to Plaintiff, as required by the Fair Credit Reporting Act("FCRA"), 15 U.S.C. § 1681.): Disclosure of Credit Scores; Notice to Home Loan Applicant; Opt-Out Notices; Notice of Adverse Action; Risk-Based Pricing Notice; band the Investigative Consumer Report Disclosure.

21.     PHH, as well as its agents, officers, employees, and affiliated or associated parties, have engaged in and, on information and belief, continue to engage in a pattern of unlawful, fraudulent or unfair predatory real estate lending practices causing victims of her actions, including possibly Plaintiff, to lose her home through foreclosure.

22.     Lenders with loans originated in the State of California are required under Cal. Civ. § 2923.5(a)(2) to make good faith efforts to explore alternatives to foreclosure prior to taking such drastic action. PHH and HSBC did not do so with Plaintiff.

## VI. FIRST CAUSE OF ACTION:
## TO SET ASIDE TRUSTEE SALE

23.     The allegations contained in all previous paragraphs are realleged and

incorporated herein by reference.

24.     Plaintiff requests that that the Court exercise its equitable power to vacate, overturn, and/or set aside the trustee sale of the Property, because there are substantial defects in the non-judicial foreclosure procedure, fraud and deceit in the procurement of the loan, and any sale is therefore improper, unfair and unlawful.

25.     Pursuant to the California Civil Code, before a mortgagee, trustee, beneficiary or authorized agent can file a notice of default or proceed with a foreclosure sale, they are required to: "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. § 2923.5(a)(2).

26.     Neither PHH nor HSBC participated in the section 2923.5 meeting; the filing the Notice of Sale is unjustified. There has not been proper compliance with the statutory requirements for non-judicial foreclosure sale and the transaction is tainted by fraud.

27.     Plaintiff was anxious about the situation regarding payments and keeping her home, and would have welcomed a phone call from Defendants to explore her options to avoid foreclosure, but neither of the Defendants nor any agent or party acting on their behalf fulfilled these obligations under the Civil Code.

## VII. SECOND CAUSE OF ACTION:

## TRUTH IN LENDING ACT

28.     The allegations contained in all previous paragraphs are realleged and incorporated herein by reference.

29.     In April 2007, Plaintiff entered into a consumer credit transaction, the Loan, with PHH, in which the extended consumer credit was subject to a finance charge and which was initially payable to PHH or its successor in interest.

30.     As part of this consumer credit transaction, the lenders retained a security interest in the Property, which is Plaintiff' home. The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of TILA

and Regulation Z as set forth in detail above.

31.    HSBC, acting as trustee for PHH 2007-3, and as an agent for PHH, foreclosed on Plaintiff in an attempt to collect the debt for which the Property acted as collateral/security. Pursuant to 15 U.S.C. § 1640(e), Plaintiff raises these TILA violations by recoupment or setoff. Plaintiff also seeks rescission of the loan agreement.

32.    Additionally, as the result of the foregoing, Plaintiff has suffered actual harm, in an amount to be ascertained at trial, in that, among other things, she has been financially and emotionally harmed, she lost the Property, her home, through a trustee sale, she has suffered damage to her credit, and she has incurred and will incur attorneys' fees and costs.

## VIII. THIRD CAUSE OF ACTION
## PERATA MORTGAGE RELIEF ACT
### (California Civil Code § 2923.5)

33.    The allegations contained in all previously numbered paragraphs are realleged and incorporated herein by reference.

34.    Plaintiff' loan was executed between January 1, 2003 and December 21, 2007. The notice of trustee sale was recorded after September 6, 2008.

35.    California Civil Code section 2923.5, passed on July 8, 2008 and made effective on September 6, 2008, states that it is the public policy of the State of California to mitigate the detrimental effects of the current foreclosure crisis in this state. The statute requires all lenders and servicers with loans originated in the State of California, such as the subject loans here, to make good faith efforts to explore alternatives to the drastic remedy of foreclosure prior to the right to foreclose on a loan.

36.    Defendants failed and refused to explore such alternatives with Plaintiff and instead filed a Notice of Trustee Sale and moved forward to foreclose unlawfully. The failure and refusal of the Defendants to comply with the statutory prerequisites negated HSBC's legal right to foreclose on the Property. The acts and omissions of Defendants in violation of this statute have caused economic injury and severe emotional

distress to Plaintiff.

37.     As a direct and proximate result of the alleged violations, Plaintiff was and continues to be damaged in an amount according to proof but not yet fully ascertained, including, without limitation, statutory damages, consequential damages and all amounts paid in connection with the transaction.

## IX. FOURTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES ACT

38.     The allegations contained in all previously numbered paragraphs are realleged and incorporated herein by reference.

39.     PHH violated TILA and other statutory provisions as outlined above; both Defendants violated the Perata Mortgage Relief Act as detained above.

40.     Defendant's acts and omissions alleged herein are a violation of both statutory requirements and public policy and therefore constitute a violation of Business and Professions Code §§ 17200 et seq.

41.     Plaintiff has suffered injury in fact, and has lost money and the Property because of these violations.

42.     Plaintiff seeks restitution and injunctive relief.

## X. FIFTH CAUSE OF ACTION

## QUIET TITLE

## (Cal. Civ. P. § 760.010-764.080)

43.     The allegations contained in all previously numbered paragraphs are realleged and incorporated herein by reference.

44.     Plaintiff is the owner of the Property, and is entitled to possession of the Property.

45.     Defendants claim an adverse interest in the Property owned by Plaintiff, but such claims are without right; Defendants have no right, title, stake, lien, or interest in the Property.

46.     Because Plaintiff properly exercised her rescission rights herein, any debt

owed by her to the Lenders or others related to and/or arising from the Property is an unsecured debt and does not impair title. There is no debt that impairs title to the Property.

47.     Plaintiff seeks a determination of its fee simple title in this action as against the Defendant as of the date that this Complaint is filed.

48.     Concurrent with the filing of this Complaint, Plaintiff is filing and recording a Notice of Pendency of Action with the Los Angeles County Assessor's Office.

49.     The legal description of the Property is as follows:

All that certain real property In the County of LOS ANGELES, State of California, described as follows: LOT 6 IN BLOCK I OF TRACT JUDSON'S SUBDIVISION OF BUTLER GROVE AND GLEICHNER'S ADDITION TO OCEANSIDE, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 996, FILED IN THE OFFICE OF THE COUNTY RECORDER OF San Diego COUNTY, JUNE 22, 1906. The APN is 145-131-39

## XI. SIXTH CAUSE OF ACTION:
## DECLARATORY RELIEF

50.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

51.     An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties with regard to the Property. Plaintiff contends that as a result of the fraud and violations alleged herein, the trustee sale is invalid, and any consequent transfer of the title to the Property is invalid and void, and that any debt Defendant contend is owed on the loans described above is not owed, or at best is unsecured by the Property. Defendant, by their actions, disputes these contentions.

52.     A judicial declaration is necessary and appropriate at this time under the

circumstances in order that Plaintiff and the Defendant may ascertain their rights and duties pursuant to the Property and all matters related to and arising from it.

## XII. SEVENTH CAUSE OF ACTION:
## INTENTIONAL MISREPRESENTATION

53.  Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

54.  At the time of the refinancing of the Property, PHH made various representations about the affordability of the Loan Plaintiff was obtaining to refinance the Property.

55.  The representations were untrue as set forth in detail above.

56.  Plaintiff, on information and belief, alleges that PHH made these representations with the intent to induce Plaintiff to enter into the loan agreements.

57.  Plaintiff reasonably believed and relied on the representations by PHH because it appeared to be reputable.

58.  At the time PHH made the representations herein alleged, it knew them to be false.

59.  As a direct and proximate result of the intentional misrepresentations by PHH Plaintiff has suffered actual harm in an amount to be ascertained at trial, in that, among other things, she has been financially and emotionally harmed; she lost the Property, her home, through a trustee sale; she has suffered damage to her credit; and she has incurred and will incur attorneys' fees and costs.

60.  In doing the acts alleged in this complaint, PHH acted with oppression, fraud, and malice as defined in Civil Code section 3294, and Plaintiff is entitled to punitive damages to punish it, in addition to actual damages.

## XIII. EIGHTH CAUSE OF ACTION:
## NEGLIGENT MISREPRESENTATION

61.  Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

62.     At the time of the refinancing of the Property, PHH made various representations about the affordability of the Loan Plaintiff was obtaining to refinance the Property.

63.     The representations were untrue as set forth in detail above.

64.     Plaintiff is informed and believes and thereon alleges that PHH made these representations with the intent to induce Plaintiff to enter into the loan agreements.

65.     Plaintiff reasonably believed and relied on the representations by PHH, because PHH appeared to be reputable.

66.     At the time PHH made the representations herein alleged, it knew or should have known them to be false, and/or had no reasonable basis for believing them to be true.

67.     As a direct and proximate result of the negligent misrepresentations by PHH Plaintiff has suffered actual harm in an amount to be ascertained at trial, in that, among other things, she has been financially and emotionally harmed; she lost the Property, her home, through a trustee sale; she has suffered damage to her credit; and she has incurred and will incur attorneys' fees and costs.

## XIV. NINTH CAUSE OF ACTION:

## RESCISSION

68.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

69.     Plaintiff entered into the loan agreements for the refinance of the Property relying in good faith upon the fraudulent misrepresentations by PHH, as set forth in detail above.

70.     As a direct and proximate result of the fraud by PHH, Plaintiff has suffered actual harm in an amount to be ascertained at trial, in that, among other things, she has been financially and emotionally harmed; she lost the Property, her home, through a trustee sale; she has suffered damage to her credit; and she has incurred and will incur attorneys' fees and costs.

71.     Because Plaintiff was induced to enter into the loan agreement by fraud, the agreement is subject to rescission and is voidable pursuant to Civil Code §1689(b)(1).

72.     Plaintiff hereby requests such rescission.

73.     Service of the Summons and Complaint in this action constitutes notice of rescission of the subject lending agreements and an offer to return consideration as provided in section 1691 of the Code of Civil Procedure. Additionally, her counsel sent a letter, prior to filing this Complaint, demanding rescission.

## XV. PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. Vacate, overturn or set aside the trustee sale and restore title in the plaintiff;

2. For rescission;

3. For actual damages;

4. For statutory damages;

5. For punitive damages where appropriate;

6. For restitutionary disgorgement of all monies received as a result of unfair competition;

7. For interest as permitted by law;

8. For a judgment quieting Plaintiff fee simple title to the real property and establishing that Defendant has no right, title, or interest in or to the Property.

9. For costs and attorneys' fees as provided under the statutes alleged above.

10. An award of such other and further relief as the Court deems just and proper.

Respectfully submitted,

HEWELL LAW FIRM

_____

Dated: February 12, 2010.

Harold M. Hewell

1

## **EXHIBIT LIST**:

2

3

4   Exhibit "A"          Forensic Audit of Subject Loan          Pages 18 - 40

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "A"

Home Loan Auditing
"FORENSIC LOAN AUDITORS - UNCOVERING THE TRUTH"

| | |
|---|---|
| Borrower: | Hernandez, Maria |
| Subject Property: | 1211 Holly Street, Oceanside, CA 92054 |
| Origination Lender: | PHH Mortgage |
| Origination Loan #: | 0039717707 |
| MIN #: | 100020000397177076 |
| Loan Amount: | $276,250 |
| Origination UW: | Unknown |
| Application Date: | Unknown |
| Closing Date: | 04/25/2007 |
| Funding Date: | 04/30/2007 |
| Sales Price: | N/A |
| Appraised Value: | $425,000 |
| Seller: | N/A |
| Mortgage Broker: | Hacienda Mortgage |
| Interviewer: | Jimenez, Jose |
| Appraiser: | Bernhard, Joseph |
| Closing Agent: | Lawyers Title Company |
| Escrow Officer: | Unknown |
| Escrow Number: | 01203509-102 AZ1 |
| Title Insurance: | Lawyers Title Company |
| Cash Out Proceeds: | $22,059.92 |
| | |
| Loan Summary: | Refinance, Primary, SFR, NO DOC, 65% LTV/CLTV. |

## FEDERAL TRUTH IN LENDING ACT VIOLATION-FINANCE CHARGE TEST

**This loan failed the TILA finance charge test.** (12 CFR § 226.18(d)(1))
The finance charge is $331,585.37. The disclosed finance charge of $327,361.62 is not considered accurate because it is understated by more than $100.

**This loan failed the TILA foreclosure rescission finance charge test.** (12 CFR §226.23(h))
The finance charge is $331,585.37. The disclosed finance charge of $327,361.62 is not considered accurate for purposes of rescission because it is understated by more than $35.

**This loan failed the TILA APR test.** (12 CFR § 226.22(a)(2),(4))
The annual percentage rate (APR) is 6.403%. The disclosed APR of 6.252% is not considered accurate because it is more than 1/8 of 1 percentage point above or below the APR as determined in accordance with the actuarial method.

## UNDERWRITING VIOLATION - EXCESSIVE DTI RATIO

Subject loan appears to have been underwritten as No Documentation (No Doc) by origination lender. This program does not require the borrower to state monthly income in order to qualify for the loan. The borrower's primary occupation, as stated on the application, is Quality Control for Print Ink for 8 years.

The borrower provided Tax Returns for 2005 and 2006. Income is calculated as follows:

| Tax Year | 2005 | 2006 |
|---|---|---|
| Wages | $21,314 | $22,466 |
| Schedule "E" | $0.00 | ($50) |
| Total Income | $21,314 | $22,416 |

The borrower's total income for the 2 year period was $43,730 or $1,822 per month.

Total debts are calculated as follows:

| | |
|---|---|
| $1,656.26 | Fixed Rate |
| $267.75 | Insurance, Taxes, HOA |
| $300.00 | Consumer Debts |
| <u>$2,701.00</u> | Net Rent Loss |
| $4,925.01 | Total Debts |

The borrower's DTI ratio, based on the income derived from the Tax Returns, is 270.31% ($4,925.01 ÷ $1,822).

In the above scenario, the borrower's DTI ratio far exceeds the maximum allowed DTI ratio per all usual and customary underwriting guidelines for ALT-A and/or Subprime lending. The lenders underwriter has a responsibility to not only follow the lenders underwriting guidelines but to insure that a thorough analysis of the borrower's income, liabilities and credit report is performed to determine the borrower's ability to repay the loan.

While we do not have access to the lender's actual underwriting documents, from a review of the borrower's Tax Returns, we can determine that the Debt to Income Ratio for this loan was approximately 270%, well above the traditional debt ratio of 45% – 50%. This ratio, which is computed by dividing the borrower's gross monthly income into the borrower's total debt payments, including the proposed mortgage that is being underwritten, is a key factor used by underwriters to assess the borrower's ability to repay the debt. It is our opinion that an argument could be made, that the lender should not have made this loan and put the borrower in a position where there was a high probability of failure, especially when taking future interest rate increases into account.

From the documentation provided in the file, it appears that this loan might have been processed as a 'No Documentation' loan. The underwriter has apparently approved this loan based upon credit score and a belief that the property would continue to increase in value. No consideration of the ability of the borrower to repay this loan with a realistic means test appears to have been made. This is especially true when the adjustment of the interest rate is taken into account.

## DUTY OF LENDER AND BROKER

The duty of the broker is to deal with the consumer in good faith. If the broker knew or should have known that the borrower will or had a likelihood of defaulting on this loan they have a fiduciary duty to the borrower to NOT place them in that loan (in harms way). Additionally broker has a contractual duty of good faith and fair dealings with the lender which would be breached if they knowingly placed a loan with the lender failing to disclose the material fact that the borrower will likely default or file bankruptcy.

The duty of the lender is a responsibility to perform their own diligence to determine if a customer is being placed in a loan that is legal, properly disclosed, is the best loan for the consumer given their financial circumstance and affordable over the life of the loan if present financial positions hold steady.

If the lender is aware that the borrower would be better off with another type of loan that the lender offers, they have violated their duty to the consumer and such act of deception would likely be considered fraud on the consumer and a predatory lending practice.
It is the opinion of the examiner that the lender may have violated their duty to the borrower by:

1. Placing the borrowers into their current loan product without regard for other products that might have suited the borrower(s) better,

2. Placing the borrower(s) into a loan whereby it was likely the borrowers would default or incur bankruptcy as a result of the loan and it was reasonably foreseeable that such would occur,

3. Placing borrower(s) into a loan, not bothering to verify employment or to verify income,

4. Placing the borrower(s) into a loan when the real estate market was in a free fall, and it was easy to foresee that such would continue, endangering the borrowers financial stake in the home.

## UNDERWRITING VIOLATION: PREDATORY LENDING PRACTICES

Practices widely identified as predatory include:

- fraudulent practices that conceal the facts of the borrower's obligation and/or income;
- steering a borrower to a high-cost loan when they could qualify for a lower-cost loan;
- making a loan that the borrower cannot afford to repay;
- making a loan to a borrower that provides no actual benefit for the borrower;
- imposing a prepayment penalty on a loan without providing benefit to the borrower;
- unfairly stripping borrower equity through excessive points and fees or imposing overpriced, unnecessary add-ons such as lump-sum credit life insurance as a condition of a loan;
- flipping loans by inducing repeated refinancing, without benefit to the borrower, in order to generate fees.

"No Documentation" loans allow a borrower to qualify for a loan without stating income. While this type of loan provides many borrowers with the means to qualify for mortgage loans that they could not qualify for under more traditional lending programs, the lender still has a fiduciary responsibility to take steps to insure that the borrower has a reasonable ability to repay the loan.

Based on the borrower's total monthly liabilities of $4,925.01 the borrower would have had to earn approximately $120,000 annually or $10,000 monthly to qualify under most mortgage lending guidelines. The lender obviously ignored the fact that the borrower's occupation as Quality Control could not possibly earn enough to qualify for this loan.

The auditor conducted an internet search of salary.com and indeed.com for the borrower's Quality Control position in the same geographic region and determined that this salary could expect to earn $3,384 monthly. Had the underwriter conducted this investigation the DTI ratio, at qualification, would have been 145.54% ($4,925.01 ÷ $3,384), which would not have been sufficient to qualify for this loan.

It is the auditors' opinion that the lender made no effort to apply a reasonableness test to the borrower's ability to repay the loan. The lender should have attempted to determine that the borrower's occupation could provide sufficient income to allow for a reasonable ability to repay the loan.

## COMPLIANCE VIOLATION – CA CIVIL CODE SEC. 2948.5

California Civil Code Section 2948.5 states that the borrower is to be provided with a copy of the California Per Diem Interest Disclosure. The auditor reviewed the documents provided to the borrower by the lender. The California Per Diem Interest Disclosure was not provided as required by California Civil Code Section 2948.5.

## COMPLIANCE VIOLATIONS: MISSING DOCUMENTS

As noted below, this file did not include various initial disclosures that are mandated under both State and Federal laws. If a broker does not deliver the initial disclosures to the borrower, it becomes incumbent for the lender to ensure that these disclosures were delivered to the borrower. If the borrower was not provided with these disclosures within three business days from the date of the original loan application, the borrower will need to complete a sworn statement testifying to that effect.

## COMPLIANCE VIOLATIONS: MISSING DOCUMENTS

File is missing MOST initial disclosure documents and ALL final disclosures, including but not limited to:

Per RESPA (Real Estate Settlement Procedures Act – 12 USC 2601 et seq.)
    Good Faith Estimate
    Affiliated Business Arrangement Disclosure
    Servicing Disclosure Statement
    Notice of Assignment, Sale or Transfer of Servicing Rights
    Escrow Account Disclosure

Per TILA (Truth in Lending Act – Reg Z – 15 USC 1601 et seq, 12 CFR 226):
    Initial Truth in Lending Statement & Itemization of Amount Financed

Per ECOA (Equal Credit Opportunity Act – Reg B – 12 CFR 202):
    Initial signed & dated Uniform Residential Loan Application (1003)

Per FCRA (Fair Credit Reporting Act – 15 USC 1681):
    Disclosure of Credit Scores
    Notice to Home Loan Applicant
    Opt-Out Notices
    Notice of Adverse Action
    Risk-Based Pricing Notice
    Investigative Consumer Report Disclosure

Per California Civil Code section 2948.5:
    California Per Diem Interest Disclosure

# FORENSIC AUDIT REPORT

| | |
|---|---|
| **Client Name:** | Home Loan Auditing |
| **Lender Loan Number:** | 0039717707 |

Loan Analysis Performed By:

## Home Loan Auditing

| | |
|---|---|
| **Borrower Name:** | Maria Dolores Hernandes |
| **Property Address:** | 1211 Holly Street |
| | Oceanside, CA 92054 |

Overview:

| HOEPA | TILA | RESPA | State & Local Predatory | State Regs | Exceptions | Investor/ Custom |
|-------|------|-------|--------------------------|------------|------------|------------------|
| ✓ | ✗ | ✓ | ✓ | ✓ | -- | -- |

## AUDIT RESULTS - SUMMARY OF FINDINGS

### Federal HOEPA (Sections 32, 35)

| | Result | Loan Data | Comparison Data | Variance |
|---|--------|-----------|------------------|----------|
| HOEPA Higher-Priced Mortgage Loan: | N/A | | | |
| HOEPA Higher-Priced Mortgage Loan Prepayment Term Test: | N/A | | | |
| HOEPA Higher-Priced Mortgage Loan Document Type Test: | N/A | | | |
| HOEPA High Cost Mortgage APR Threshold Test: | PASS | 6.403% | 12.810% | -6.407% |
| HOEPA High Cost Mortgage Points and Fees Threshold Test: | PASS | $11,555.88 | $21,171.85 | -$9,615.97 |
| HOEPA High Cost Mortgage: | NO | | | |
| HOEPA High Cost Mortgage Timing of Disclosure Test: | N/A | | | |
| HOEPA High Cost Mortgage Balloon Payment Test: | N/A | | | |
| HOEPA High Cost Mortgage Negative Amortization Test: | N/A | | | |
| HOEPA High Cost Mortgage Prepayment Term Test: | N/A | | | |
| HOEPA High Cost Mortgage Document Type Test: | NOT TESTED | | | |

### Federal TILA

| | Result | Loan Data | Comparison Data | Variance |
|---|--------|-----------|------------------|----------|
| TILA Finance Charge Test: | FAIL | $327,361.62 | $331,585.37 | -$4,223.75 |
| TILA Rescission Finance Charge Test: | NOT TESTED | | | |
| TILA Foreclosure Rescission Finance Charge Test: | FAIL | $327,361.62 | $331,585.37 | -$4,223.75 |
| TILA APR Test: | FAIL | 6.252% | 6.403% | -0.151% |
| TILA Right of Rescission Test: | PASS | | | |
| Initial TIL Disclosure Date Test: | N/A | | | |

### Federal RESPA

| | Result | Loan Data | Comparison Data | Variance |
|---|--------|-----------|------------------|----------|
| RESPA GFE Disclosure Date Test: | PASS | | | |

### CA AB 489/344 (Division 1.6 of the Financial Code)

| | Result | Loan Data | Comparison Data | Variance |
|---|--------|-----------|------------------|----------|
| CA AB 489/344 Consumer Loan: | YES | | | |
| CA AB 489/344 Consumer Loan Single Premium Credit Insurance Test: | PASS | | | |
| CA AB 489/344 Covered Loan APR Threshold Test: | PASS | 6.403% | 12.810% | -6.407% |
| CA AB 489/344 Covered Loan Points and Fees Threshold Test: | PASS | $11,555.88 | $15,878.88 | -$4,323.00 |

This Report Does Not Constitute Legal Advice.        Audit Page 5 of 23

Page 22 of 40

| | Result | Loan Data | Comparison Data | Variance |
|---|---|---|---|---|
| CA AB 489/344 Covered Loan: | NO | | | |
| CA AB 489/344 Covered Loan Prepayment Term Test: | N/A | | | |
| CA AB 489/344 Covered Loan Balloon Payment Test: | N/A | | | |
| CA AB 489/344 Covered Loan Subordinate Lien Negative Amortization Test: | N/A | | | |
| CA AB 489/344 Covered Loan DTI Presumption Test: | N/A | | | |
| CA AB 489/344 Covered Loan Financing of Points and Fees Test: | N/A | | | |

| State Regulations | Result | Loan Data | Comparison Data | Variance |
|---|---|---|---|---|
| Interest Rate Test: | PASS | 6.000% | | |
| Grace Period Test: | PASS | 15 Days | | |
| Late Fees Test: | PASS | 5.000% | 6.000% | -1.000% |
| Prepayment Term Test: | PASS | 0 Months | 60 Months | -60 Months |

| State Regulations Restricted Fees | Result | Loan Data | Comparison Data | Variance |
|---|---|---|---|---|
| Broker Fees Test: | NOT TESTED | | | |
| Reconveyance Fee Alert: | ALERT | | | |

| Threshold Index(es) | | | |
|---|---|---|---|
| Name | Term | Yield | Date |
| Treasury Security | 30 Year | 4.810% | 02/15/2007 |

## TRUTH IN LENDING INFORMATION

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|
| 6.403% | | | |
| Interest Rate | $331,585.37 | $264,666.33 | $596,251.70 |
| 6.000% | | | |

| Payment Schedule | |
|---|---|
| Number of Payments | Amount of Payments |
| 359 | $1,656.26 |
| 1 | $1,654.36 |

## FORENSIC AUDIT RESULTS DETAIL

| Federal HOEPA (Sections 32, 35) | |
|---|---|
| The HOEPA higher-priced mortgage loan threshold is not applicable to this loan for one of the following reasons: ( 12 CFR §226.35(a)(3) as enacted in 2008 ) <br> • The loan has an application date before the effective date of October 1, 2009; or <br> • The loan is a transaction to finance the initial construction of a dwelling ; or <br> • The loan is a temporary or "bridge" loan with a term of 12 months or less, such as a loan to purchase a new dwelling where the consumer plans to sell a current dwelling within 12 months | N/A |
| The HOEPA higher-priced mortgage loan prepayment term test is not applicable to this loan. ( 12 CFR §226.35(a)(3), (b)(2) as enacted in 2008 ) <br> The loan is not a higher-priced mortgage loan. | N/A |
| The HOEPA higher-priced mortgage loan document type test is not applicable to this loan. ( 12 CFR §226.35(a) as enacted in 2008 ) <br> The loan is not a higher-priced mortgage loan. | N/A |
| This loan passed the HOEPA high cost mortgage APR threshold test. ( 12 CFR §226.32(a)(1)(i) as enacted in 1995, and amended in 2001 ) <br> The annual percentage rate (APR) at consummation is 6.403%, which does not exceed the yield of 4.810%, as of February 15, 2007 on 30 year Treasury securities (the Treasury securities having comparable periods of maturity), plus 8.000 percentage points. The yield is as of the fifteenth day of the month immediately preceding the month of the application for extension of credit, which was received by the creditor on March 12, 2007. | PASS |
| This loan passed the HOEPA high cost mortgage points and fees threshold test. ( 12 CFR §226.32(a)(1)(ii) as enacted in 1995, and amended in 2001 ) | PASS |

The total points payable by the borrower on or before consummation is $1,886.89 and does not exceed the greater of 8 percent of the "total loan amount" (as defined in the official commentary to paragraph 32(a)(1)(ii)) or $547.00.

| | |
|---|---|
| **High Cost Mortgage** ( 12 CFR §226.32(a)(1)(i), (ii) as enacted in 1995, and amended in 2001 ) ( 12 CFR §226.2 as enacted in 1995 ) | **NO** |

The loan is not a high cost mortgage due to one of the following findings:
- The loan passed both the high cost mortgage APR threshold test and the high cost mortgage points and fees threshold test; or
- The loan is a residential mortgage transaction.

| | |
|---|---|
| **The timing of disclosure test is not applicable to this loan due to one or more of the following findings.** ( 12 CFR §226.31(c) as enacted in 1995 ) ( 12 CFR §226.32(a) as enacted in 1995 ) | **N/A** |

- Pre-close audits do not pertain to the consummation of a loan.
- The loan is not a high cost mortgage.

| | |
|---|---|
| **The balloon payment test is not applicable to this loan.** ( 12 CFR §226.32(a) as enacted in 1995 ) | **N/A** |

The loan is not a high cost mortgage.

| | |
|---|---|
| **The negative amortization test is not applicable to this loan.** ( 12 CFR §226.32(a) as enacted in 1995 ) | **N/A** |

The loan is not a high cost mortgage.

| | |
|---|---|
| **The prepayment term test is not applicable to this loan.** ( 12 CFR §226.32(a) as enacted in 1995 ) | **N/A** |

The loan is not a high cost mortgage.

| | |
|---|---|
| **This loan is not tested against the document type test.** ( 12 CFR §226.32(e)(1) as enacted in 1995 , and 12 CFR §226.34(a)(4) as amended in 2001, and 2008 ) | **NOT TESTED** |

The loan's application date is before the law's effective date of October 1, 2009.

### Federal TILA

| | |
|---|---|
| **This loan failed the TILA finance charge test.** (12 CFR § 226.18(d)(1)) | **FAIL** |

The finance charge is $331,585.37. The disclosed finance charge of $327,361.62 is not considered accurate because it is understated by more than $100.

| | |
|---|---|
| **This loan was not tested against the TILA rescission finance charge test due to one of the following findings:** (12 CFR § 226.23(g)(1)) | **NOT TESTED** |

- A disclosed finance charge was not provided.
- Your company settings are configured to run the TILA foreclosure rescission finance charge test as part of an audit report rather than the TILA rescission finance charge test.

| | |
|---|---|
| **This loan failed the TILA foreclosure rescission finance charge test.** (12 CFR §226.23(h)) | **FAIL** |

The finance charge is $331,585.37. The disclosed finance charge of $327,361.62 is not considered accurate for purposes of rescission because it is understated by more than $35.

| | |
|---|---|
| **This loan failed the TILA APR test.** (12 CFR § 226.22(a)(2),(4)) | **FAIL** |

The annual percentage rate (APR) is 6.403%. The disclosed APR of 6.252% is not considered accurate because it is more than 1/8 of 1 percentage point above or below the APR as determined in accordance with the actuarial method.

| | |
|---|---|
| **This loan passed the TILA right of rescission test.** Closed-end (12 CFR § 226.23(a)(3)), Open-end (12 CFR §226.15(a)(3)) | **PASS** |

The funding date is not before the third business day following consummation.
The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by 12 CFR §226.23 or §226.15, or delivery of all material disclosures, whichever occurs last.

| | |
|---|---|
| **The initial TIL disclosure date does not apply to this loan due to one of the following:** Closed-end (12 CFR §226.17(b)), Open-end (12 CFR §226.5b(1)) | **N/A** |

- The application date of the loan is on or after July 30, 2009, and the loan is not a mortgage transaction subject to the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) that is secured by the consumer's dwelling; or
- The application date of the loan is before July 30, 2009, and the loan is not a "residential mortgage transaction" subject to the Real Estate Settlement Procedures Act (RESPA).

### Federal RESPA

| | |
|---|---|
| **This loan passed the Good Faith Estimate disclosure date test.** (24 CFR §3500.7) | **PASS** |

The loan has a Good Faith Estimate disclosure date that is within three business days of the application date and is on, or before, the closing date.
The lender shall provide all applicants for a federally related mortgage loan with a good faith estimate of the amount of or range of charges for the specific settlement services the borrower is likely to incur in connection with the settlement. The lender shall provide the good faith estimate required under this section either by delivering the good faith estimate or by placing it in the mail to the loan applicant, not later than three business days after the application is received or prepared. Calculations take into account a submitted preference that this test treat the creditor's office as being open to the public on Saturdays for carrying on substantially all of its business functions, as described in 24 CFR §3500.2.

CA AB 489/344 (Division 1.6 of the Financial Code)

| | |
|---|---|
| **Consumer Loan** (CA AB 344 §1 [CA FC §4970(d)])<br>The loan is a consumer loan, as defined in the legislation, due to all of the following findings.<br>   ■ The loan is secured by a property intended to be used as the principal dwelling of the consumer.<br>   ■ The loan is secured by property improved by a one-to-four residential unit.<br>   ■ The loan is not a bridge loan, as defined in the legislation. | **YES** |
| **This loan passed the single premium credit insurance test.** (CA AB 344 §9 [CA FC §4979.7])<br>The consumer loan does not finance credit life, credit disability, credit property, or credit unemployment insurance premiums, or debt cancellation or suspension agreement fees. | **PASS** |
| **This loan passed the APR threshold test.** (CA AB 344 §1 [CA FC §4970(b)(1)(A)])<br>The annual percentage rate at consummation does not exceed by more than 8% points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month of the application date. | **PASS** |
| **This loan passed the points and fees threshold test.** (CA AB 344 §1 [CA FC §4970(b)(1)(B)])<br>The total points and fees, as defined in the legislation, do not exceed 6% of the total loan amount, as defined in HOEPA (Section 32). | **PASS** |
| **Covered Loan** (CA AB 344 §1 [CA FC §4970(b)])<br>The loan is not a covered loan, as defined in the legislation, due to one or more of the following findings.<br>   ■ The loan is not a consumer loan, as defined in the legislation.<br>   ■ The loan does not exceed either the APR threshold or the points and fees threshold.<br>   ■ If the latest available closing date is before January 1, 2006, the original principal balance of the loan does exceed $250,000.<br>   ■ If the latest available closing date is on or after January 1, 2006, the original principal balance of the loan does exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association ($417,000.00). | **NO** |
| **The prepayment term test is not applicable to this loan.** (CA AB 344 §2 [CA FC §4973(a)(1)])<br>The loan is not a covered loan, as defined in the legislation. | **N/A** |
| **The balloon payment test is not applicable to this loan.** (CA AB 344 §2 [CA FC §4973(b)(1)])<br>The loan is not a covered loan, as defined in the legislation. | **N/A** |
| **The subordinate lien negative amortization test is not applicable to this loan.** (CA AB 344 §2 [CA FC §4973(c)])<br>The loan is not a covered loan, as defined in the legislation. | **N/A** |
| **The DTI presumption test is not applicable to this loan.** (CA AB 344 §2 [CA FC §4973(f)(1)])<br>The loan is not a covered loan, as defined in the legislation. | **N/A** |
| **The financing of points and fees test is not applicable to this loan.** (CA AB 489 [CA FC §4979.6])<br>The loan is not a covered loan, as defined in the legislation. | **N/A** |

| State Regulations | |
|---|---|
| **This loan passed the interest rate test.**<br>The loan has an interest rate that conforms to the requirements for the lender's license type in the state where the property is located. | **PASS** |
| **This loan passed the grace period test.**<br>The loan has a grace period that conforms to the requirements for the lender's license type in the state where the property is located. | **PASS** |
| **This loan passed the late fees test.**<br>The loan has late fees that conform to the requirements for the lender's license type in the state where the property is located. | **PASS** |
| **This loan passed the prepayment term test.**<br>The loan has a prepayment term that conforms to the requirements for the lender's license type in the state where the property is located. | **PASS** |

| State Regulations Restricted Fees | |
|---|---|
| **This loan is not tested by the broker fees test.**<br>The broker fees limitations depend on the license of the broker, which is not captured on the loan form.<br>   ■ A licensed Real Estate Broker, when acting as the broker, may receive commissions not exceeding the totals outlined in CA Bus. Prof. Code §10242(b).<br>   ■ A licensed Residential Mortgage Lender, when acting as the broker, may receive commissions not exceeding the totals outlined in CA Bus. Prof. Code §10242(b). (CA Bus. Prof. Code §50703).<br>   ■ A licensed Finance Lender, when acting as the broker, may only broker loans to other licensed Finance Lenders (CA. Fin. Code §22059) and charge for services actually rendered (10 CCR §1451). | **NOT TESTED** |
| **Reasonable Reconveyance Fee** | **ALERT** |

# DETAIL MORTGAGE INFORMATION

| | | | |
|---|---|---|---|
| **Lender Name:** | PHH Mortgage Services | **Forensic Loan Auditors** | |
| | | **File #:** | |
| **Lender Loan Number:** | 0039717707 | | |
| **Originator** | Hacienda Mortgage | | |
| **MIN:** | 1000200003971770 76 | | |
| **License Type:** | California Exemption Letter | | |
| **DIDMCA Exempt:** | No | | |
| **HUD Approved Lender:** | No | | |

### Investor
| | |
|---|---|
| **Default:** | ☑ |

### Borrower
| | | | |
|---|---|---|---|
| **First Name:** | Maria Dolores | **Last Name:** | Hernandes |
| **Total Income:** | | **DTI Ratio:** | 0.000% |

### Property
**Address:**

| Number | Street Name | Type (St, Ave, etc.) | Direction | Unit # |
|---|---|---|---|---|
| 1211 | Holly | Street | | |

| City | County | State | Zip |
|---|---|---|---|
| Oceanside | San Diego | CA | 92054 |

| | | | |
|---|---|---|---|
| **Type:** | Detached SFD | **Number of Units:** | 1 |
| **Occupancy:** | Primary Residence | | |

### Loan Information
| | | | |
|---|---|---|---|
| **Loan Amount:** (exclude PMI, MIP, Funding Fee financed) | $276,250.00 | **Loan Amount:** (with Finance Charge) | $276,250.00 |
| **Program Type:** | Fixed | **Interest Rate:** | 6.000% |
| **Loan Purpose:** | Refinance | **Undiscounted Rate:** | |
| **Purpose of Refinance:** | Cash-Out/Other | **Disclosed APR:** | 6.252% |
| **Refinancing Portfolio Loan:** | No | **Disclosed Finance Charge:** | $327,361.62 |
| **LTV Ratio:** | 65.000% | **Irregular Payment Transaction:** | No |
| **CLTV Ratio:** | 65.000% | **Maturity Term:** | 360 months |
| **Loan Type:** | Conventional | **Amortization Term:** | 360 months |
| **Lien Type:** | First Mortgage | **Late Charges:** | 5.000% |
| **Document Type:** | No Asset or Income Verification | **Grace Period:** | 15 days |

### Prepayment Penalty
| | |
|---|---|
| **Program Name:** | No Prepayment Penalty |
| **Prepayment Penalty Program:** | This Prepayment Penalty is defined by the following program: |
| | If the borrower makes a prepayment, he/she will not be required to pay a prepayment charge. |

| | | | |
|---|---|---|---|
| **Prepayment Term:** | 0 months | **Max. Prepayment Penalty Amount:** (for high-cost points & fees) | $0.00 |

### Construction / Construction to Permanent
| | | | |
|---|---|---|---|
| **Rate:** | | **Construction Term:** | |
| **Estimate Interest on:** | Amount Advanced | **Interest Reserve:** | |

### Adjustable Rate Mortgage

| ARM Margin: | | First Adjustment: | | Period: | |
|---|---|---|---|---|---|
| ARM Index: | | Subsequent Adjustment: | Cap: | Period: | |
| Ceiling: | | | | | |
| Floor: | | Adjustment Rounding: | No rounding | | |

| Graduated Payment Mortgage | | | |
|---|---|---|---|
| Rate: | | Term: | |

| Potential Negative Amortization (Option ARM) | | Buydown | | | |
|---|---|---|---|---|---|
| Negative Amortization Type: | None | 1. | Rate: | Term: | |
| | | 2. | Rate: | Term: | |
| | | 3. | Rate: | Term: | |
| | | 4. | Rate: | Term: | |
| | | 5. | Rate: | Term: | |

| Interest Only (excl. Negative Amortization and Option ARM) | | Dual Amortization | | | |
|---|---|---|---|---|---|
| Term: | 0 months | Initial Amortization | Term: | Period: | |
| | | Subsequent Amortization | Term: | Period: | |

### Mortgage Insurance (PMI)

| Upfront Premium: | | Monthly Premium (Initial): | |
|---|---|---|---|
| or | Prepaid Finance ☐ Charge | or | Period |
| Cash/Credit | | Monthly Premium (Renew): | |
| Financed $0.00 | | or | Period |
| | | | Cancel at |
| Adjust Payments Due to Upfront Premium | | Calculate Premiums Using Loan Amount | |
| | | Cancel At Midpoint ☑ | |

### Dates

| Application Date: | 03/12/2007 | Closing / Settlement Date: | 04/25/2007 |
|---|---|---|---|
| Initial GFE Disclosure Date: | 03/12/2007 | Funding / Disbursement Date: | 04/30/2007 |
| Initial TIL Disclosure Date: | 03/12/2007 | Rate Lock Date: | |
| Sec. 32 (HOEPA) Disclosure Date: | | | |

### 800 Items payable in connection with loan

| | | | Prepaid Finance Charges | Financed By Lender | Compensation To |
|---|---|---|---|---|---|
| 801 | Loan Origination Fee | $ 2,762.50 | ☑ | ☑ | Broker |
| 802 | Loan Discount Fee | $ 4,834.38 Bona Fide - GSE ☐ Bona Fide - State ☐ | ☑ | ☑ | Lender |
| 803 | Appraisal Fee | $ 350.00 | ☐ | ☑ | Other |
| 804 | Credit Report Fee | $ 18.25 | ☐ | ☑ | Broker |

| | | | | | |
|---|---|---|---|---|---|
| 805 | Lender Inspection Fee (performed prior to closing) | $ | ☐ | ☐ | Lender |
| | Lender Inspection Fee (performed post closing) | $ | ☐ | ☐ | Lender |
| 806 | Mortgage Insurance Application Fee | $ | ☐ | ☐ | Lender |
| 807 | Assumption Fee | $ | ☐ | ☐ | Lender |
| | Modification Fee | $ | ☐ | ☐ | Lender |
| | Tie-in Fee | $ | ☐ | ☐ | Lender |
| | Mortgage Broker Fee (Direct) | $ 575.00 | ☑ | ☑ | |
| | Mortgage Broker Fee (Indirect / POC) | $ | | | |
| | Yield Spread Premium (Indirect / POC) | $ | | | |
| | CLO Access Fee | $ | ☐ | ☐ | Lender |
| | Application Fee | $ | ☐ | ☐ | Lender |
| | Rate Lock Fee | $ | ☐ | ☐ | Lender |
| | Commitment Fee | $ | ☐ | ☐ | Lender |
| | Processing Fee | $ 750.00 | ☑ | ☑ | Broker |
| | Underwriting Fee | $ 450.00 | ☑ | ☑ | Lender |
| | Administration Fee | $ | ☐ | ☐ | Lender |
| | Appraisal Review Fee | $ | ☐ | ☐ | Lender |
| | Appraisal Re-Inspection Fee | $ | ☐ | ☐ | Lender |
| | Flood Determination - Initial Fee | $ | ☐ | ☑ | Lender |
| | Flood Determination - Life of Loan Fee | $ 19.50 | ☑ | ☑ | Affiliate of Lender |
| | Document Preparation Fee | $ | ☐ | ☐ | Lender |
| | Document Signing Fee | $ | ☐ | ☐ | Lender |
| | Courier / Messenger Fee | $ | ☐ | ☐ | Lender |
| | Tax Related Service Fee | $ 85.00 | ☑ | ☑ | Other |
| | Wire Transfer Fee | $ | ☐ | ☐ | Lender |
| | Warehousing Fee | $ | ☐ | ☐ | Lender |
| | Advance Mortgage Payments | $ | ☐ | ☐ | Lender |
| | Credit Life Insurance Premium | $ | ☐ | ☐ | Lender |
| | Accident Insurance Premium | $ | ☐ | ☐ | Lender |
| | Health Insurance Premium | $ | ☐ | ☐ | Lender |
| | Loss of Income Insurance Premium | $ | ☐ | ☐ | Lender |
| | Debt Cancellation Fee | $ | ☐ | ☐ | Lender |
| | Prepayment Penalty | $ | ☐ | ☐ | Lender |
| | Compliance Audit / Quality Control Fee | $ | ☐ | ☐ | Lender |
| | Seller-Paid Points and Fees | | | | |
| | discount points fee | $ 1,381.25 | ☑ | ☑ | Broker |
| | express courier/mail fee | $ 100.00 | ☑ | ☑ | Broker |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |

| 900: Items required by lender to be paid in advance | | | Prepaid Finance Charges | Financed By Lender | Compensation To |
|---|---|---|---|---|---|
| 901 | Interest | $ 46.04 for 1 day(s) | ☑ | ☑ | Lender |
| 902 | Mortgage Insurance Premium | $ | ☐ | ☐ | Lender |
| 903 | Hazard Insurance Premium | $ | ☐ | ☐ | Lender |
| | County Property Taxes | $ | ☐ | ☐ | Lender |
| | Flood Insurance Premium | $ | ☐ | ☐ | Lender |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |

This Report Does Not Constitute Legal Advice.

## 1000: Reserves deposited with lender

| | | | Prepaid Finance Charges | Financed By Lender | Compensation To |
|---|---|---|---|---|---|
| 1001 | Hazard Insurance Reserve | $ | ☐ | ☐ | Lender |
| 1002 | Mortgage Insurance Reserve | $ | ☐ | ☐ | Lender |
| 1003 | City Property Taxes Reserve | $ | ☐ | ☐ | Lender |
| 1004 | County Property Taxes Reserve | $ | ☐ | ☐ | Lender |
| 1005 | Annual Assessments | $ | ☐ | ☐ | Lender |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |

## 1100: Title Charges

| | | | Prepaid Finance Charges | Financed By Lender | Compensation To |
|---|---|---|---|---|---|
| 1101 | Settlement / Closing / Escrow Fee | $ 425.00 | ☑ | ☑ | Other |
| 1102 | Abstract / Title Search Fee | $ | ☐ | ☐ | Lender |
| 1103 | Title Examination Fee | $ | ☐ | ☐ | Lender |
| 1104 | Title Insurance Binder Fee | $ | ☐ | ☐ | Lender |
| 1105 | Title Document Preparation Fee | $ | ☐ | ☐ | Lender |
| 1106 | Notary Fee | $ 100.00 | ☐ | ☑ | Other |
| 1107 | Attorney's Fee | $ Excludable due to borrower choice ☐ | ☐ | ☐ | Lender |
| | Attorney's Fee (Other) | $ Excludable due to borrower choice ☐ | ☐ | ☐ | Lender |
| 1108 | Title Insurance | $ 625.00 | ☐ | ☑ | Other |
| 1109 | Lender's Coverage | $ | ☐ | ☐ | Lender |
| 1110 | Owner's Coverage | $ | ☐ | ☐ | Lender |
| | Assignment Endorsement Fee | $ | ☐ | ☐ | Lender |
| | Sub-Escrow Fee | $ | ☐ | ☐ | Lender |
| | Reconveyance Fee | $ | ☐ | ☐ | Lender |
| | Title Courier Fee | $ | ☐ | ☐ | Lender |
| | Funding, Wire, or Disbursement Fee | $ | ☐ | ☐ | Lender |
| | e-mail/copy fee | $ 80.00 | ☑ | ☑ | Other |
| | messenger/courier fee | $ 75.00 | ☑ | ☑ | Other |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |

## 1200: Government Recording and Transfer Charges

| | | | Prepaid Finance Charges | Financed By Lender | Compensation To |
|---|---|---|---|---|---|
| 1201 | Recording Fee | $ 64.00 | ☐ | ☑ | Other |
| 1202 | City / County / Tax / Stamps | $ | ☐ | ☐ | Lender |
| 1203 | State Tax / Stamps | $ | ☐ | ☐ | Lender |
| | Subordination Recording Fee | $ | ☐ | ☐ | Lender |
| | Assignment Recording Fee | $ | ☐ | ☐ | Lender |
| | Recording Service Fee | $ | ☐ | ☐ | Lender |
| | Intangible Tax | $ | ☐ | ☐ | Lender |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |

## 1300: Additional Settlement Charges

| | | | Prepaid Finance Charges | Financed By Lender | Compensation To |
|---|---|---|---|---|---|
| 1301 | Survey Fee | $ | ☐ | ☐ | Lender |
| 1302 | Pest Inspection Fee | $ | ☐ | ☐ | Lender |
| | Architectural / Engineering Fee | $ | ☐ | ☐ | Lender |
| | Building Permit | $ | ☐ | ☐ | Lender |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |
| | | $ | ☐ | ☐ | |

This Report Does Not Constitute Legal Advice.

# Summary of
# Applicable Laws

RESPA LAW

Sec. 3500.6 Special information booklet at time of loan application

(a) Lender to provide special information booklet.   Subject to the exceptions set forth   in this paragraph, the lender shall provide a copy of the special information   booklet to a person from whom the lender receives, or for whom the lender   prepares a written application for a federally related mortgage loan. When two or   more persons apply together for a loan, the lender is in compliance if the lender   provides a copy of the booklet to one of the persons applying.

(1) The Lender shall provide the special information booklet by delivering it or placing it in the mail to the applicant not later than three business days (as that term is defined in 3500.2 after the application is received or prepared.   However, if the lender denies the borrower's application or credit before the end of the   three-business day period, then the lender need not provide the booklet to the   borrower. If a borrower uses a mortgage broker, the mortgage broker shall   distribute the special information booklet and the lender need not do so.

(2) In the case of a federally related mortgage loan involving an open-ended credit plan, as defined in 226.2(a) (20) of Regulation Z (12 CFR), a lender or mortgage broker that provides the borrower with a copy of the brochure entitled "When Tour Home is On the Line: What You Should Know About Home Equity Lines of Credit", or any successor brochure issued by the Board of Governors of the Federal Reserve System, is deemed to be in compliance with this section.

(3) In the categories of transactions set forth at the end of this paragraph, the lender or mortgage broker does not have to provide the booklet to the borrower.   Under the authority of section 19(a) of RESPA (12 U.S.C. 2617(a)), the Secretary may choose to endorse the forms or booklets of other Federal agencies.   In such an event, the requirements for delivery by lenders and the availability of the booklet or alternate materials for these transactions will be set forth in a Notice in the Federal Register.   This paragraph shall apply to the following transactions:

   (i)     Refinancing transactions;
   (ii)    Closed-end loans, as defined in 12 CFR 226.2(a)(10) of Regulation Z, when the lender takes a subordinate lien;
   (iii)   Reverse mortgages; and
   (iv)    Any other federally related mortgage loan whose purpose is not the purchase of a 1-to-4 family residential property.

(b) Revision.    The Secretary may from time to time revise the special information   booklet by publishing a notice in the Federal Register.

(c) Reproduction.   The special information booklet may be reproduced in any form, provided that no change is made other than as provided under paragraph (d) of

this section.   The special information booklet may not be made a part of a larger document for purposes of distribution under RESPA and this section.   Any color, size and quality of paper, type of print, and method of reproduction may be used so long as the booklet is clearly legible.

(d) Permissible Changes.   (1) No changes to, deletions from, or additions to the special information booklet currently prescribed by the Secretary shall be make other than those specified in this paragraph (d) or any others approved in writing by the Secretary.   A request of the Secretary for approval of any changes shall be submitted in writing to the address indicated in 3500.3, stating the reasons why the applicant believes such changes, deletions or additions are necessary.

(2) The cover of the booklet may be in any form and may contain any drawings, pictures or artwork, provided that the words "settlement costs" are used in the title. Names, addresses and telephone numbers of the lender or others and similar information may appear on the cover, but no discussion of the matters covered in the booklet shall appear on the cover.

(3)The special information booklet may be translated into languages other than English.

TILA LAW

Regulation Z

Regulation Z (12 CFR 226) implements the Truth in Lending Act (TILA) (15 USC 1601 et seq), which was enacted in 1968 as title I of the Consumer Credit Protection Act. Since its implementation, the regulation has been amended many times to incorporate changes to the TILA or to address changes in the consumer credit marketplace.

In the 1990's, Regulation Z was amended to implement the Home Ownership and Equity Protection Act of 1994, which imposed new disclosure requirements and substantive limitations on certain higher-cost closed-end mortgage loans and included new disclosure   requirements for reverse mortgage transactions.

The Truth in Lending Act is intended to ensure that credit terms are disclosed in a meaningful way so that consumers can compare credit terms more readily and more knowledgeably.

Determination of the Finance Charge and the APR

    A. The finance charge (226.4) is a measure of the cost of consumer credit represented in dollars and cents.  Along with the APR disclosures, the disclosure of the finance charge is central to the uniform credit cost disclosure envisioned by  the TILA.  One of the more complex tasks under Regulation Z is determining whether a charge associated with an extension of credit must be included in or   excluded from the disclosed finance charge. The finance charge initially includes any charge that is, or will be, connected with a specific loan.  Charges imposed by third parties are finance charges if the institution requires use of the third party.  Charges imposed by settlement or closing agents are finance charges if the institution requires the specific service that gave rise to the charge and the charge is not otherwise excluded.

    B. A prepaid finance charge (226.18(b)) is any finance charge that (1) is paid separately to the financial institution or to a third party, in cash or by check, before or at closing, settlement, or consummation of a transaction or (2) is withheld from the proceeds of the credit at any time.  Prepaid finance charges effectively reduce the amount of funds available for the consumer's use, usually before or at the time the transaction is consummated.

    C. For certain transactions consummated on or after September 30, 1995, the finance charge tolerances are as noted below:

        1. Credit secured by real property or a dwelling, the disclosed finance charge is considered accurate if it does not vary from the actual finance charge by more than $100.00.   Also overstatements are not violations.

        2. Rescission rights after the three-business-day rescission period, the disclosed finance charge is considered accurate if it does not vary from the

actual finance charge by more than one-half of 1 percent of the credit extended.

3.  Rescission rights in foreclosure, the disclosed finance charge is considered accurate if it does not vary from the actual finance charge by more than $35.00.  Also Overstatements are not considered violations and the consumer is entitled to rescind if a mortgage broker fee is not included as a finance charge.

C.  Credit costs may vary depending on the interest rate, the amount of the loan and other charges, the timing and amounts of advances, and the repayment schedule (226.22).  The Annual Percentage Rate (APR), which must be disclosed in nearly all consumer credit transactions, is designed to take into account all relevant factors and to provide a uniform measure for comparing the costs of various credit transactions

D.  The APR is a measure of the total cost of credit, expressed as a nominal yearly rate.  It relates the amount and timing of value received by the consumer to the amount and timing of payments made by the consumer.  The disclosure of the APR is central to the uniform credit cost disclosure envisioned by the TILA.

E.  The disclosed annual percentage rate (APR) on a closed-end transaction is considered accurate if for regular transactions (including any single-advance transaction with equal payments and equal payment periods or transaction with an irregular first or last payment and/or an irregular first payment period), the APR is within one-eighth of 1 percentage point of the APR calculated under Regulation Z   (section 226.22(a)(2).

F.  If for irregular transactions (including multiple-advance transactions and other transactions not considered regular), the APR is within one-quarter of 1   percentage point of the APR calculated under Regulation Z (section 226.22(a)(3).

G.  If for mortgage transactions, the APR is within one-eighth of 1 percentage point for regular transactions or one-quarter of 1 percentage point for irregular transactions and the rate results from the disclosed finance charge and the disclosed finance charge would be considered accurate under section 226.18(d)(1)   or section 226.23(g) or (h) of Regulation Z (section 226.22(a)(4).

Variable-Rate Loans (226.18(f))

If the terms of the legal obligation allow the financial institution, after consummation of the transaction, to increase the APR, the financial institution must furnish the consumer with certain information on variable rates.   Some of the more important transaction- specific variable-rate disclosure requirements under section 226.18 are:

A.  Disclosures for variable-rate loans must cover the full term of the transaction and must be based on the terms in effect at the time of consummation.

B.  IF the variable-rate transaction includes either a seller buydown that is reflected in a contract or a consumer buydown, the disclosed APR should be a composite rate based on the lower rate for the buydown period and the rate that is the basis for   the variable-rate feature for the remainder of the term.

C. If the initial rate is not determined by the index or formula used to make later interest rate adjustments, as in a discounted APR must reflect a composite rate based on the initial rate for as long as it is applied and, for the remainder of the term, the index or formula at the time of consummation (that is, the fully indexed rate).

D. If a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the adjustment, from changing to the fully indexed rate, the effect of that rate or payment cap needs to be reflected in the disclosure.

E. The index at consummation need not be used if the contract provides for a delay in implementation of changes in an index value (for example, the contract indicates that future rate changes are based on the index value in effect for some specified period, such as forty-five days before the change date).   Instead, the financial institution may use any rate from the date of consummation back to the beginning of the specified period (for example, during the previous forty-five-day period).

F. If the initial interest rate is set according to the index or formula used for later adjustments but is set at a value as of a date before consummation, disclosures should be based on the initial interest rate, even though the index may have changed by the consummation date.

Special Rules for Certain Home Mortgage Transactions

The requirements of section 226.32 apply to a consumer credit transaction secured by the consumer's principal dwelling in which either:

A. The APR at consummation will exceed by more than 8 percentage points for first- lien mortgage loans, or by more than 10 percentage points for subordinate-lien mortgage loans, the yield on Treasury securities having periods of maturity   comparable to the loan's maturity (as of the 15th day of the month immediately   preceding the month in which the application of the extension of credit is received   by the creditor).

B. The total points and fees payable by the consumer at or before loan closing will exceed the greater of 8 percent of the total loan amount or a dollar amount that is adjusted annually on the basis of changes in the consumer price index.

The following are exempt from section 226.32:

A. Residential mortgage transactions (generally purchase money mortgages)
B. Reverse mortgage transactions subject to section 226.33 of Regulation Z
C. Open-end credit plans subject to subpart B of the regulation.

TILA LAW

Regulation B Sec.
202.9 Notifications

(g) Disclosure of Credit Scores by Certain Mortgage Lenders

(1) In general.   Any person who makes or arranges loans and who uses a consumer
credit score, as defined in subsection (f), in connection with an application initiated or
sought by a consumer for a closed end loan or the establishment of an open end loan for
a consumer purpose that is secured by 1 to 4 units of residential real property (hereafter
in   this subsection referred to as the 'lender') shall provide the following to the
consumer as   soon as reasonably practicable:

(A) Information Required under Subsection (f)

    (i)      In General.   A copy of the information identified in subsection (f) that was
            obtained from a consumer reporting agency or was developed and used by
            the user of the information.

    (ii)     Notice under subparagraph (D).   In addition to the information provided to
            it   by a third party that provided the credit score or scores, a lender is only
            required to provide the notice contained in subparagraph (D)/

(B) Disclosures in Case of Automated Underwriting System

    (i)      In general.   If a person that is subject to this subsection uses an automated
            underwriting system to underwrite a loan, that person may satisfy the
            obligation to provide a credit score by disclosing a credit score and
            associated   key factors supplied by a consumer reporting agency.

    (ii)     Numerical credit score. However, if a numerical credit score is generated by
            an automated underwriting system used by an enterprise, and that score is
            disclosed to the person, the score shall be disclosed to the consumer consistent
            with subparagraph (C).

    (iii)    Enterprise defined.   For purposes of this subparagraph, the term "enterprise"
            has the same meaning as in paragraph (6) of section 1303 of the Federal
            Housing Enterprises Financial Safety and Soundness Act of 1992.

(C) Disclosures of credit scores not obtained from a consumer reporting agency.

A person that is subject to the provisions of this subsection and that uses a credit score,
other than a credit score provided by a consumer reporting agency, may satisfy the

obligation to provide a credit score by disclosing a credit score and associated key factors   supplied by a consumer reporting agency.

(D) Notice to home loan applicants.   A copy of the following notice, which shall include the name, address, and telephone number of each consumer reporting agency providing  a  credit score that was used:

"Notice To The Home Loan Applicant"

"In connection with your application for a home loan, the lender must disclose to you the   score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

"The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file.   The scores are based on data about your credit history and payment patterns.   Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan.   They may also be used to determine what interest rate you may be offered on the mortgage.   Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.   "Because the score is based on information in your credit history, it is very    important that you review the credit-related information that is being furnished to make sure it is accurate.   Credit records may vary from one company to another.

"If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score.

The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a  loan application.

"If you have questions concerning the terms of the loan, contact the lender."

(E) Actions not required under this subsection.   This subsection shall not require any   person to-

(i) explain the information provided pursuant to subsection (f);

(ii) disclose any information other than a credit score or key factors, as defined in   subsection (f);

(iii) disclose any credit score or related information obtained by the user after a loan has   closed;

(iv)    provide more than 1 disclosure per loan transaction;

(v)     or provide the disclosure required by this subsection when another person has   made the disclosure to the consumer for that loan transaction

(F) No Obligation for Content

(i)     In general.   The obligation of any person pursuant to this subsection shall be   limited solely to providing a copy of the information that was received from   the consumer reporting agency.

(ii)    Limit on liability.   No person has liability under this subsection for the content   of that information or for the omission or any information within the report   provided by the consumer reporting agency.

(G) Person defined as excluding enterprise.   As used in this subsection, the term "person"  does not include an enterprise (as defined in paragraph (6) of section 1303 of the Federal   Housing Enterprises Financial Safety and Soundness Act of 1992).

(2) Prohibition on Disclosure Clauses Null and Void

(A) In general.   Any provision in a contract that prohibits the disclosure of a   credit score by a person who makes or arranges loans or a consumer reporting agency is void.

(B) No liability for disclosure under this subsection- A lender shall not have   liability under any contractual provision for disclosure of a credit score   pursuant to this subsection.

GLB LAW (Gramm, Leach, Bliley Act)

**Federal Trade Commission**
**Bureau of Consumer Protection**
**Division of Financial Practices**

**The Gramm-Leach-Bliley Act**
**Privacy of Consumer Financial Information**

**IV. Consumers and Customers**

**A. Consumers**

Definition: A 'consumer' is an individual who obtains or has obtained a financial product or service from a financial institution that is to be used primarily for personal, family, or household purposes, or that individual's legal representative.

**Examples of Consumer Relationships:**

- Applying for a loan
- Obtaining a cash from a foreign ATM, even if it occurs on a regular basis
- Cashing a check with a check-cashing company
- Arranging for a wire transfer

**General Obligations to Consumers**

Provide an initial (or "short-form") notice about the availability of the privacy policy if the financial institution shares information outside the permitted exceptions.

Provide an opt-out notice, with the initial notice or separately, prior to a financial institution sharing nonpublic personal information with nonaffiliated third parties.

Provide consumers with a 'reasonable opportunity" to opt out before disclosing nonpublic personal information about them to nonaffiliated third parties, such as 30 days from the date the notice is mailed.

If a consumer elects to opt out of all or certain disclosures, a financial institution must honor the opt-out direction as soon as is reasonably practicable after the opt-out is received.

If you change your privacy practices such that the most recent privacy notice you provided to a consumer is no longer accurate (e.g., you disclose a new category of NPI to a new nonaffiliated third party outside of specific exceptions and those changes are not adequately described in your prior notice), you must provide new revised privacy and opt-out notices.

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| | |
|---|---|
| **I (a) PLAINTIFFS**<br><br>MARIA HERNANDEZ, an individual, | **DEFENDANTS**<br>HSBC BANK USA NATIONAL ASSOCIATION, individually, and as<br>Trustee for PHH 2007-3, and PHH MORTGAGE CORPORATION,<br>a New Jersey corporation,<br><br>*FEB 12 PH 1: 25*<br>CLERK US DISTRICT OF CALIFORNIA<br>SOUTHERN DIST<br>DEPUTY<br>BY _____ |
| **(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**    San Diego<br>(EXCEPT IN U.S. PLAINTIFF CASES)    Co., CA | **COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**<br>Harold M. Hewell,<br>HEWELL LAW FIRM<br>105 West F St., Second Fl., San Diego, California 92101<br>(619) 235-6854/(888) 298-0177 (f)<br>hmhewell@hewell-lawfirm.com | **ATTORNEYS (IF KNOWN)**<br><br>'10 CV 0352 LAB    WVG |

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- X 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | X |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Common law and Federal and California statutory causes of action arising from home mortgage lending violations.

Diversity jurisdiction for individual causes of action under 28 U.S.C. § 1332.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury - Medical Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 365 Personal Injury - Product Liability | 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 630 Liquor Laws | 820 Copyrights | 450 Commerce/ICC Rates/etc. |
| 150 Recovery of Overpayment &Enforcement of Judgment | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 640 RR & Truck | 830 Patent | 460 Deportation |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 650 Airline Regs | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 370 Other Fraud | 660 Occupational Safety/Health | **SOCIAL SECURITY** | 810 Selective Service |
| 153 Recovery of Overpayment of Veterans Benefits | 350 Motor Vehicle | 371 Truth in Lending | 690 Other | 861 HIA (1395ff) | 850 Securities/Commodities Exchange |
| 160 Stockholders Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | **LABOR** | 862 Black Lung (923) | 875 Customer Challenge 12 USC |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 864 SSID Title XVI | 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 730 Labor/Mgmt. Reporting & Disclosure Act | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence Habeas Corpus | 740 Railway Labor Act | **FEDERAL TAX SUITS** | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment | | 790 Other Labor Litigation | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/Accommodations | 530 General | 791 Empl. Ret. Inc. | 871 IRS - Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Tort to Land | 444 Welfare | 535 Death Penalty | Security Act | | 950 Constitutionality of State |
| 245 Tort Product Liability | 440 Other Civil Rights | 540 Mandamus & Other | | | 890 Other Statutory Actions |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

X 1 Original Proceeding    2 Removal from State Court    3 Remanded from Appellate Court    4 Reinstated or Reopened    5 Transferred from another district (specify)    6 Multidistrict Litigation    7 Appeal to District Judge from Magistrate Judgment

| | |
|---|---|
| **VII. REQUESTED IN COMPLAINT:**    CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | **DEMAND $** More than $200,000, to be determined     Check YES only if demanded in complaint:    JURY DEMAND X YES   NO |

**VIII. RELATED CASE(S) IF ANY (See Instructions):**    JUDGE _____    Docket Number _____

DATE 2/12/10      SIGNATURE OF ATTORNEY OF RECORD

10182  $350 — TB 02-12-10

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS010182
Cashier ID: mbain
Transaction Date: 02/12/2010
Payer Name: HERNANDEZ V HSBC
----------------------------------
CIVIL FILING FEE
 For: HERNANDEZ V HSBC
 Case/Party: D-CAS-3-10-CV-000352-001
 Amount:        $350.00
----------------------------------
CASH
 Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```